Jose MEDRANO, Appellant,

v.

Heather OSTERMAN and Jonathan
Weiss, Appellees.

No. 04–CV–890.

District of Columbia Court of Appeals.

Argued Oct. 5, 2005.
Decided Oct. 20, 2005.

Jeffrey S. Larson, Greenbelt, MD, with
whom Richard S. Basile, was on the brief,
for appellant.

Carol S. Blumenthal, Washington, DC, for appellee Osterman.

Benny L. Kass, Washington, DC, with whom Jennifer M. Castor, was on the brief, for appellee Weiss.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and NEBEKER, Senior Judge.

FARRELL, Associate Judge:

Under the Rental Housing Conversion and Sale Act (the Act), D.C.Code § 42–3401.01 *et seq.* (2001), before an owner of a rental housing accommodation may sell the property, the owner must "give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale." *Id.* § 42–3404.02(a). In the case of an accommodation with two to four rental units, once a tenant group or individual tenants have submitted a written statement of interest to exercise the right to purchase, the owner must "afford the tenants a reasonable period ... [of] not ... less than 90 days" to negotiate a contract of sale. *Id.* § 42–3404.10(2)(A). "If more than 1 individual tenant submits a written statement of interest," the owner must "negotiate with each tenant separately, or jointly if the tenants agree to negotiate jointly." *Id.* The question this appeal presents is whether, if more than one individual tenant of a two-to-four unit accommodation has submitted a timely written statement of interest, the owner may contract for sale to one of those tenants without negotiating with the others for the ninety-day period. We hold, in keeping with what we view to be the plain language of the statute, that the owner may not do so, but rather must negotiate in good faith for the full ninety days with each tenant who has expressed a timely written interest in buying. Because the trial court's judgment in this case rested on a contrary determination, we reverse.

I.

Appellee Osterman is the owner of a house located at 1414 Delafield Place, N.W., which contains three living units. At the time of this litigation, Osterman lived in one of the units and the other two were rented by appellant Medrano and Gerard Lavery, a nonparty, respectively. On March 5, 2004, Osterman listed the house for sale with a realtor. On or about March 8, 2004, appellee Weiss, a third party, made an offer to buy the house, and in conformity with D.C.Code § 42–3404.03, the realtor sent notice to Medrano of Osterman's intent to sell it. At the time, Osterman had not accepted Weiss's offer, so the notice to Medrano was on a pre-printed form entitled, in part, "Offer of Sale & Opportunity to Purchase *Without* a Third Party Contract."[1] The day after the notice was sent, Osterman accepted Weiss's offer to buy the house, conditioned on the statutory right of the tenants, as a group or individually, to purchase. On March 17, 2004, tenant Lavery assigned his right of purchase to Weiss, as permitted by D.C.Code § 42–3404.06. On March 19, Osterman accepted Weiss's offer under the assignment of rights from Lavery, and the contract was executed for a purchase price of $505,000. On March 30, 2004, however, Medrano gave Osterman written notice of his interest in buying the house, and on or about April 6, 2004, he submitted a contract offer of $460,000, but with an escalation clause increasing the price to $2,000 more than any other offer, up to a limit of $507,000.

1. Medrano's various complaints of deficiencies in the notice are either meritless or, in any case, provide no separate basis for reversing the trial court's decision.

Uncertain of her rights and obligations, on April 19, 2004, Osterman filed a complaint in Superior Court for, among other things, a declaratory judgment concerning the respective claims of Weiss and Medrano under the Act. Medrano answered by asking the court to declare him the sole and legal contract purchaser based on his higher offer (which Osterman had not accepted), and Weiss counterclaimed for specific performance of his executed contract and for damages for breach of contract. Following a hearing at which the material facts were undisputed, the trial court ruled that the March 19, 2004, contract between Osterman and Weiss was valid and enforceable under the Act. Relying chiefly on D.C.Code § 42–3404.10(2)(C), which provides that "[i]f the owner is required to negotiate with more than one tenant pursuant to this section, the owner may decide which contract is more favorable without liability to the other tenants," the court viewed the statutory scheme as permitting an owner who has received multiple tenant offers to buy to accept an offer before the end of the ninety-day negotiation period specified in § 42–3404.10(2)(A).

## II.

■ The parties do not dispute that Medrano furnished Osterman with a timely written statement of his interest in buying the house.[2] On the other hand, it is conceded that Weiss, although not a tenant of the rental accommodation, effectively became one for purposes of the Act by his assignment of rights from Lavery. *See* D.C.Code § 42–3404.06. Weiss therefore argues that Osterman was free to contract with him, a "tenant," without negotiating with Medrano because the Act imposes no "restrictions as to Osterman's rights to contract with one tenant over another" (Br. for Weiss at 15). The trial court essentially agreed. Although it is true, as will be seen, that the Act does not limit an owner's choice of which tenant to contract with after good faith negotiations, it does not support Weiss's argument that Medrano was not entitled to the full ninety days in which, like Weiss, to negotiate to buy the accommodation.

■ We do not find the statutory language ambiguous. Section 42–3404.10(2)(A), as stated, provides that "[u]pon receipt of a letter of intent from *a tenant* or a tenant group, the owner shall afford *the tenants* a reasonable period to negotiate a contract of sale, and shall not require less than 90 days. . . . If more than 1 individual tenant submits a written statement of interest, the owner *shall negotiate with each tenant separately,* or jointly if the tenants agree to negotiate jointly." (Emphases added.) The statute thus requires negotiation by the owner with each individual tenant who has filed a timely written statement of interest, and for a period of not less than 90 days. That this duty is to negotiate with all such tenants, and is not lifted as soon as the owner receives an acceptable offer from one, is reinforced by subsection (C), the very provision on which Weiss relies: "If the owner is required *to negotiate with more than one tenant pursuant to this section,* the owner may decide which contract is more favorable without liability to the other tenants." Section 42–3404.10(2)(C) (emphasis added). Thus, the owner's right to choose

2. In the case of an accommodation with two to four units, if the tenants acting jointly have not given the owner a written statement of interest within fifteen days after receiving a written offer of sale from the owner, an individual tenant has an additional seven days in which to provide such a statement. D.C.Code § 42–3404.10(1). No one questioned in the trial court, nor is it disputed here, that Medrano's written statement of interest submitted on March 30, 2004, met the timing requirement.

among contracts is conditioned on the prior duty to negotiate in accordance with "this section," *i.e.*, "with each tenant separately" who has expressed the required interest, and for a period of at least ninety days. Although Medrano's (timely) statement of interest was not submitted until after Weiss had made a contract offer, Osterman was not free to accept any offer from a tenant or assignee before negotiating for the statutory period with other tenants, like Medrano, similarly interested in buying.[3]

"When the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further." *District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C. 1999). But assuming "it is appropriate [in this case] to look beyond even the plain and unambiguous language of [the] statute to understand the legislative intent," *District of Columbia v. Cato Inst.*, 829 A.2d 237, 240 (D.C.2003), the legislative report confirms what the statute says. The final sentence of § 42–3404.10(2)(A) ("the owner shall negotiate with each tenant separately") was added to the Act as part of the "Rental Housing Conversion and Sale Act of 1980 Reenactment and Amendments Act of 1995." The accompanying REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS FOR THE DISTRICT OF COLUMBIA, TO BILL 11–53 (March 14, 1995) (the Report) explained that the sentence was being added because, while "[c]urrent law allows the

tenants to purchase as a group and, if not as a group, as individuals[,] ... it is silent about what happens if two or three individual tenants compete." Report at 12. The amendment, accordingly, was meant to "clarify that ... if more than one individual tenant submitted a statement of interest, [the statute] would require the owner to negotiate in good faith with each such tenant." *Id.* Interested tenants can scarcely "compete" in this way if the owner may accept the first offer within the ninety-day period.

Another amendment stressed indirectly the importance of the negotiating periods to the Council. It added § 42–3404.10(2)(C), quoted above, allowing an owner, if required to negotiate with more than one tenant, to choose the "more favorable" contract without liability to the other tenants. Before adopting this provision, which gave "the owner the right to choose which contract is most acceptable from the competing tenants," the Council considered and rejected alternatives including a requirement that the owner accept the offer from "the first [tenant] to submit a contract." Report at 12. Not only would that requirement have been "arbitrary," but it "would make the [statutory] time periods meaningless." *Id.* Likewise, permitting an owner to accept the first, or any, contract offer by a tenant without regard to the right of other interested tenants to negotiate for ninety days

---

**3.** Subsection (B) of § 42–3404.10(2) further provides that "[i]f, at the end of the 90–day period or any extensions thereof, the tenants jointly have not contracted with the owner, the owner shall provide an additional 30–day period, during which any 1 of the current tenants may contract with the owner for the purchase of the accommodation." D.C.Code § 42–3404.10(2)(B). Weiss appeared to contend at oral argument that this provision limits the negotiation period for individual

tenants to thirty, rather than ninety, days. Although the issue is moot in this case since Osterman did not afford Medrano even thirty days to negotiate, Weiss's reading of the provision is unpersuasive; it appears instead to govern a situation where the tenants begin by negotiating jointly but no contract results within the required ninety days, whereupon the individual tenants have an *additional* thirty days in which to negotiate.

would, in the Council's words, make that time period meaningless.

■ Weiss argues, and the trial court agreed, that the Act may and should be construed "flexibly" enough by permit a balance of harms analysis taking into account Weiss's costly reliance on Osterman's acceptance of his offer before Medrano even expressed an interest in buying the house.[4] However, the balance of interests—of potential advantages and losses—in rental housing conversion has been struck by the legislature in establishing the requirements it did in § 42–3401.10(2); and it is not for the courts to adjust that balance to correct perceived inequities. Weiss, in his acquired capacity as "tenant," had no greater priority in his right to negotiate for the house during the ninety days than did Medrano. That he and Osterman contracted in disregard of an owner's duty to negotiate with each tenant timely expressing an interest, and that he may have been harmed as a result, is very much a self-inflicted wound. As for Osterman, the statute gave her the right to "decide which contract is more favorable without liability to the other tenants," provided she negotiated for the statutory period with each tenant declaring his interest, including Medrano. That can scarcely be counted as a harm, when the Act's "overarching purpose is to protect *tenant* rights" by strengthening the bargaining position of tenants and discouraging the displacement of tenants through conversion or sale of rental property. *1618 Twenty–First St. Tenants' Ass'n v. Phillips Collection,* 829 A.2d 201, 203–04 & n. 1 (D.C.2003) (emphasis added).

■ It follows from this that Medrano too is wrong in baldly asserting in his brief that he was entitled to have his offer accepted because he offered a higher price. A higher offer is not necessarily a more "favorable" one, a judgment the Act in any case leaves entirely to the owner, "without liability to the other tenants."[5] What Medrano is entitled to is the opportunity to negotiate in good faith with Osterman, along with Weiss, for the statutory period; he is not entitled to dictate the outcome, a fact his attorney conceded at oral argument.[6] Accordingly, the order of the trial court declaring the Weiss/Osterman contract to be a valid and binding agreement is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

4. *See* Br. for Weiss at 20 ("In reliance on his valid and binding contract with Osterman, Weiss was forced to vacate his previous apartment incurring substantial expense, conveyed a $15,000 earnest money deposit to Osterman's real estate broker, paid for a termite inspection and appraisal of the property, and because of Medrano's challenges, subsequently lost the lock-in, losing a favorable rate for his mortgage interest.").

5. *See* Report, *supra*, at 12 ("other terms [than the highest price] may be preferable to the owner").

6. Our holding is not meant to say that if, before the expiration of the ninety-day period, negotiations in good faith with competing tenants have reached an impasse, the owner would not be free to accept one of the pending offers. That situation is not before us, and we express no opinion regarding it.