**Elizabeth ALLMAN, et al., Appellants,**

v.

**Roy D. SNYDER, Jr., et al., Appellees.**

No. 04–CV–424.

District of Columbia Court of Appeals.

Argued Sept. 13, 2005.

Decided Dec. 15, 2005.

---

Carol Blumenthal, Washington, DC, with whom Elizabeth Figueroa, was on the brief, for appellants.

Daniel H. Crowley, Washington, DC, for appellee Roy D. Snyder.

Morris R. Battino, Washington, DC, for appellee Todd W. Bissey.

Before SCHWELB and RUIZ, Associate Judges, and STEADMAN, Senior Judge.

SCHWELB, Associate Judge:

In this action brought pursuant to the Tenant Opportunity to Purchase Act, D.C.Code §§ 42–3404.02 *et seq.* (2001) ("TOPA" or "the Act"), Elizabeth Allman, joined by Steve Schwat, appeals from an order of the trial court granting a motion for summary judgment in favor of defendants Roy D. Snyder, Jr., and Todd W. Bissey. Mr. Snyder is the owner of a four-unit rental accommodation at 129 Fourth Street, S.E., Washington, D.C., and has offered it for sale. Ms. Allman, one of the tenants at the Fourth Street property,

is seeking to purchase the property with the assistance of Mr. Schwat. Mr. Bissey is a third party who has made an offer to purchase the property; he also claims to stand in the shoes of former tenants Lisa and Patrick McGlinchey, who assigned their TOPA rights to him. Ms. Allman's principal contentions, both in the trial court and on appeal, are (1) that, as a third party purchaser, Mr. Bissey could not become a tenant by assignment; (2) that any rights that Mr. Bissey may have had as the McGlincheys' assignee lapsed when the McGlincheys moved out of the property and ceased to be tenants; and (3) that having matched Mr. Bissey's initial offer as a third party purchaser, Ms. Allman is entitled, under TOPA, to purchase the property.

Ms. Allman all but acknowledges in her brief on appeal, accurately in our view, that her substantive position—that Mr. Bissey does not stand in the shoes of the tenants who assigned their rights to him—is contrary to the unambiguous language of the statute. Accordingly, and because Ms. Allman's remaining contentions are likewise lacking in merit, we affirm.

## I.

### THE FACTS

On September 11, 2001, Mr. Snyder was appointed by the Probate Division of the Superior Court to be the personal representative of the estate of Jeannine B. Ulmer, deceased. In his capacity as personal representative, Mr. Snyder was charged with the responsibility for selling the assets of the estate, including the Fourth Street property, in order to satisfy certain liabilities of the estate.

On or about December 1, 2002, Mr. Snyder entered into a contract with Mr. Bissey for the sale of the property, as is, for a price of $640,000, all cash. This contract,

as all parties recognized, was subject to the tenants' rights under TOPA. On December 5, 2002, in conformity with the requirements of the Act, Mr. Snyder issued to all of the then-current tenants an Offer of Sale and Tenant's Opportunity to Purchase, which was received on December 7. Mr. Snyder also provided the tenants with a copy of his contract with Mr. Bissey.

The Act provides for a fifteen-day period after receipt during which the tenants may make a joint offer to purchase the property. *See* D.C.Code § 42–3404.10; *Medrano v. Osterman*, 885 A.2d 310, 311–12 & n. 2 (D.C.2005). After the fifteen days elapsed and no joint offer had been made, Ms. Allman submitted to Mr. Snyder a Statement of Interest in purchasing the property in her capacity as an individual tenant.

On December 28, 2002, the McGlincheys, who were then residing at the Fourth Street property, assigned their rights as tenants under the Act to Mr. Bissey. On the same day, armed with this assignment, Mr. Bissey submitted to Mr. Snyder a new Statement of Interest in purchasing the property. There were no negotiations between Ms. Allman and Mr. Snyder during the ninety-day negotiation period prescribed by the statute. *See* D.C.Code § 42–3404.10(2); *Medrano*, 885 A.2d at 311, (describing statutory scheme); *Coburn v. Heggestad*, 817 A.2d 813, 815 & n. 4 (D.C.2003).

On March 20, 2003, Ms. Allman entered into a contract with Mr. Schwat to assist her in purchasing the property. Mr. Schwat and Ms. Allman formed a limited liability company in which Mr. Schwat owned 90% of the assets. On March 22, 2003, two days before the negotiation period was to expire, Ms. Allman submitted an offer to purchase the property with a con-

tract price of $641,000, *i.e.*, $1,000 more than Mr. Bissey had offered. On March 25, Mr. Bissey, relying on the McGlincheys' assignment, resubmitted his previous purchase contract to Mr. Snyder, this time in his newly acquired capacity as a tenant (or, more precisely, as the assignee of tenants). On the following day, Mr. Snyder accepted Mr. Bissey's offer and informed Ms. Allman that her offer had been rejected.

On March 28, 2003, Ms. Allman filed this action against Mr. Snyder, alleging that his rejection of her offer violated her rights as a tenant and was contrary to TOPA. Ms. Allman asked the court to award her injunctive and declaratory relief.[1] Mr. Bissey was permitted to intervene in the action as a defendant. On April 18, 2003, Mr. Snyder filed the first of two motions for summary judgment, contending that the complaint failed to state a claim upon which relief could be granted. In a written order issued on September 2, 2003, the trial judge denied the motion on the ground that Mr. Snyder had failed to engage in good faith negotiations with Ms. Allman during the statutory ninety-day negotiation period. Specifically, the judge wrote: "What is not clear is why there was no effort by the owner to negotiate with the plaintiff, who actually lived in the building, to allow her to make her offer the more attractive one."

Three weeks after the denial of his first motion for summary judgment, Mr. Snyder's counsel wrote a letter to the attorneys for Ms. Allman and Mr. Bissey in which he advised them that Mr. Snyder

> will accept amendments to your client's previous offers. Since time is of the essence to the completion of the administration of the Ulmer estate, and be-

---

1. Ms. Allman was initially the sole plaintiff. In her complaint, Ms. Allman did not disclose

Mr. Schwat's participation in her efforts to purchase the property.

cause the closing dates proposed by each offeror in his/her original offer has long since passed, each party should propose a new closing date in addition to any other modifications of her/his original offer she/he wishes to make.

In response to this letter, Mr. Bissey promptly submitted an amended offer. Ms. Allman, however, refused to participate in further negotiations. She asserted that Mr. Bissey was not a tenant, that his assignment from Mr. and Mrs. McGlinchey had lapsed because the McGlincheys had vacated the property and were no longer tenants, and that Mr. Snyder was therefore legally required, in conformity with TOPA, to sell the property to her. Disagreeing with Ms. Allman's position, Mr. Snyder accepted Mr. Bissey's amended offer, and on November 19, 2003, he filed a second motion for summary judgment.[2]

On April 26, 2004, in a seven-page written order, the trial judge granted Mr. Snyder's second motion for summary judgment. The judge wrote, in pertinent part, as follows:

> Defendant Bissey qualified as a tenant in the Property under TOPA by virtue of the assignment of the McGlinchey tenants' rights by document dated December 28, 2002, in accordance with D.C.Code §§ 42–3404.06, notwithstanding the fact that the McGlinchey tenants vacated the property on April 30, 2003.... TOPA makes no distinction between an actual tenant and a tenant by assignment, even if that assignment is to the third-party purchaser .... Defendant Snyder was entitled under §§ 42–3404.06 and 3404.10(2)(C) to accept either tenant Allman's offer or tenant Bissey's offer to purchase without liability to the other tenant.

(Paragraph numbers omitted.) The judge explained that the concern that had led to his denial of the original motion for summary judgment—specifically, whether the seller had negotiated in good faith with Ms. Allman—had been removed from the case by Mr. Snyder's subsequent invitation, extended both to Ms. Allman and to Mr. Bissey, to amend their previous offers.

Ms. Allman filed a timely notice of appeal.

## II.

## LEGAL ANALYSIS

A. *Standard of review and summary judgment standard.*

■ The question whether summary judgment was properly granted is one of law, and our review is therefore *de novo*. *Abdullah v. Roach,* 668 A.2d 801, 804 (D.C. 1995). In *Virginia Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.,* 878 A.2d 1226, 1232–33 (D.C.2005), we set forth in some detail the applicable substantive standard for the granting or denial of summary judgment. We adhere to that standard, but because we are faced on this appeal solely with issues of law, we find it unnecessary to restate the standard here.

B. *The statutory scheme.*

■ TOPA, the statute on which Ms. Allman's complaint is founded, was enacted in order to

> discourage the displacement of tenants through conversion or sale of rental property, and to strengthen the bargaining position of tenants toward that end without unduly interfering with the

---

2. During discovery, counsel for Mr. Snyder learned of Mr. Schwat's role in Ms. Allman's attempt to purchase. On Mr. Snyder's motion, Mr. Schwat was joined as a party plaintiff.

rights of property owners to the due process of law. D.C.Code § 42–3401.02(1). The Act is remedial in character, and any ambiguity in the legislation should be construed "toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." D.C.Code § 42–3405.11. The "overarching purpose [of the statute] is to protect tenant rights." *1618 Twenty-First St. Tenants' Ass'n, Inc. v. The Phillips Collection*, 829 A.2d 201, 203 (D.C.2003).

Substantively, TOPA provides that before the owner of a rental housing accommodation may sell that accommodation, he or she is required to "give the tenant an opportunity to purchase the accommodation at a price and [on] terms which represent a *bona fide* offer of sale." D.C.Code § 42–3404.02(a). "The tenant and owner shall bargain in good faith," D.C.Code § 42–3404.05(a), and

> [t]he following constitute prima facie evidence of bargaining without good faith:
>
> (1) The failure of an owner to offer the tenant a price or term at least as favorable as that offered to a third party, within the periods specified in [the Act], without a reasonable justification for so doing;
>
> (2) The failure of an owner to make a contract with the tenant which substantially conforms with the price and terms of a third party contract within the time periods specified in [the Act], without a reasonable justification for so doing . . . .

■ The issues presented in this appeal arise under the statutory scheme governing accommodations with two through four units, which is set forth in D.C.Code § 42–3404.10. *See Medrano*, 885 A.2d 311–12 & n. 2. Where such an accommodation is offered for sale, the individual tenants are first permitted to respond jointly to the owner's offer. If the tenants do not jointly respond with a written statement of interest within fifteen days, each individual tenant has seven more days to respond with a statement on his or her own behalf. The statute contemplates the possibility of competing offers by individual tenants. Section 42–3404.10(2)(A) provides that

> [i]f more than one individual tenant submits a written statement of interest, the owner shall negotiate with each tenant separately, or jointly if the tenants agree to negotiate jointly.

When the owner is required to negotiate with competing tenants, the statute permits the owner to decide which contract offer is more favorable "without liability to the other tenants." § 42–3404.10(2)(C). In other words, if both parties seeking to purchase the property are tenants, then the owner has the right, following the expiration of the ninety-day negotiation period, *see Medrano*, 885 A.2d at 312–14, to choose whichever offer he or she prefers. The Act does not limit the factors that the owner may consider in making that choice.

In apparent recognition of the reality that individual tenants, or tenants acting jointly, may lack the financial resources to match the terms offered by third party purchasers, the statute permits a tenant, without limitation, to enlist the cooperation of a third party in exercising the tenant's TOPA rights, or to assign his or her rights:

> The tenant may exercise rights under this subchapter in conjunction with a third party or by assigning or selling those rights to *any party*, whether private or governmental. The exercise, assignment, or sale of tenant rights may be for *any consideration* which the tenant, *in the tenant's sole discretion*, finds acceptable. Such an exercise, assignment, or sale may occur at *any time* in

the process provided in this subchapter and may be structured in any way the tenant, in the tenant's sole discretion, finds acceptable.

D.C.Code § 42–3404.06 (emphasis added). In the present case, Ms. Allman is seeking to exercise her rights "in conjunction with" Mr. Schwat, while Mr. and Mrs. McGlinchey have assigned their rights to Mr. Bissey.

C. *Assignment to the third party purchaser.*

■ Ms. Allman contends that "[t]he purported assignment to the third party purchaser was void as a matter of public policy." According to Ms. Allman, "[t]his [c]ourt should hold that TOPA does not sanction an assignment of tenant rights to a [t]hird [p]arty [p]urchaser by a tenant in a two to four unit housing accommodation under the circumstances presented here."[3] In so contending, however, Ms. Allman is not asking us to construe the language of the statutory assignment provision, but rather, to disregard it. Put another way, she is asking the judicial branch, as a matter of what she calls "public policy," to engraft upon the statute an exception that it does not contain.

■ Section 42–3404.06 provides, without limitation, that a tenant may assign or sell his or her rights "to *any party*, whether private or governmental." (Emphasis added.) Thus, it was conceded by all in *Medrano*, and it is equally true here, that "[Mr. Bissey], although not a tenant of the rental accommodation, effectively became one for purposes of the Act by his assignment of rights from [the McGlincheys]." *Medrano*, 885 A.2d at 312. If the legisla-

ture had intended to preclude real estate brokers or developers, or other potential third party purchasers, from receiving assignments from tenants, it could readily have so provided. This, however, was not the Council's intent. This is evident not only from the unrestricted statutory language, but also from the real world situation that a tenant must confront if the owner seeks to sell the accommodation. If a tenant in such circumstances wishes to cooperate with, or to assign or sell his or her rights to someone, that someone is likely to be a person in the real estate business who is interested in obtaining (and therefore, necessarily, in paying for) the tenant's rights in order to acquire the property. As we have noted, Mr. Schwat (Ms. Allman's associate in her attempt to purchase) and Mr. Bissey (the McGlincheys' assignee) are *both* in the real estate business. So far as the record reflects, there is no reason to believe that either Mr. Schwat or Mr. Bissey would have become involved in the venture if he were not in real estate.

■ If, as the statute plainly contemplates, a real estate broker or developer may become a tenant's assignee, then it would surely be illogical to make Mr. Bissey—a real estate broker who has offered to purchase the property on terms agreeable to the seller—ineligible for an assignment of the McGlincheys' rights. One might perhaps detect some irony, in a statutory scheme which gives some measure of protection to a tenant from a third party purchaser, to permit the third party purchaser to defeat the tenant's expectation by reaching an agreement with a dif-

---

3. By her use of the words "under the circumstances presented here," Ms. Allman appears to recognize that there are other circumstances under which a tenant of a two-to-four unit accommodation may validly assign his or her rights to a third party purchaser. It is not clear to us why, if this is so, the assignment by the McGlincheys to Mr. Bissey should not be considered valid, or what circumstances in this case differ from those in any other case of such an assignment.

ferent tenant. This irony, however, if it is indeed an irony, is dictated by the statute, which permits assignment to anybody and leaves the choice of the assignee, and the consideration to be received from that assignee, in the assigning tenant's absolute and unfettered discretion.

Ms. Allman contends that we should disregard the language of the statute because, according to her, it produces absurd or unreasonable results and defeats TOPA's overall purpose:

> Despite the arguably clear language of each of the individual TOPA provisions, it is evident that the legislature could not possibly have intended the result reached by the trial court. The result is plainly contrary to the statute's expressed purpose. The right given to tenants to assign their rights to purchase was not designed to give third party contract purchasers the ability to prevent *bona fide* tenants[4] from exercising their rights.

Ms. Allman relies on *In re Perrin*, 663 A.2d 517, 523 (D.C.1995), and authorities there cited, for the proposition that we must not "make a fetish out of plain meaning" and that where the literal meaning of the statutory language is "plainly at variance with the policy of the legislation as a whole," we should not follow it.

In this case, however, the result reached by the trial court is not "plainly at variance" with the policy of TOPA. On the contrary, the legislature deliberately included in that statute the unrestricted right of a tenant to assign his or her rights. If the result of permitting assignment is that in some cases real estate developers rather than tenants are likely to ultimately acquire the property, the members of the Council, who are surely not blind to the ways of the world, must have contemplated, and in fact did contemplate, that this might sometimes come about. In testimony before the Committee on Consumer and Regulatory Affairs of the Council of the District of Columbia in support of the Extension and Amendment Act of 1993 to the Rental Housing Conversion and Sale Act of 1980, Bill 10–243 (Sept. 23, 1993), Richard C. Eisen, an attorney who has regularly represented tenant organizations, emphasized the importance to tenants of the opportunity to sell or assign their TOPA rights:

> Many people have believed, on first blush, that Amendment (1) [the provision permitting assignments] would be inconsistent with the purposes of the Act. However, they overlook the provision in DC Code Sec 45–1602(1) [5] seeking "to strengthen the bargaining position of tenants . . . ."

> \* \* \*

> In doing research for one of the cases, I came across a fascinating transcript of the Council debate from the original enactment in 1980 . . . . [This] is a discussion among the primary cosponsors of the original Act—Councilmembers Ray, Wilson and Clarke. In that excerpt, the Councilmembers were discussing whether tenants should be allowed to sell their conversion rights for money. The unambiguous answer from all three sponsors was yes; this is the approach that was accepted by the full Council. While there was no comparable discussion concerning sale of tenant purchase rights, I

---

**4.** Given Ms. Allman's association with Mr. Schwat, and the lack of any assurance that if she were to prevail, she would continue to reside on the premises, the distinction she seeks to make between "third party purchasers" and *"bona fide* tenants" is not necessarily apposite.

**5.** Now § 42–3401.02(1), quoted at p. 1165–66, *supra.*

believe that is because there was no need to differentiate between the rationale for sale of conversion rights and sale of purchase rights.

While there may have been only a handful of reported court cases considering this issue, there have been hundreds and probably thousands of cases where tenants have sold or assigned their rights, cases that no one ever challenged in court. Indeed, this approach has been so common that it has generated its own terminology. For example, a "cafeteria plan" means a developer of a multifamily property is assigned the tenants' purchase and conversion rights in exchange for a cafeteria style offering to the tenants—some tenants can buy their units for "insider," below market sales prices, while other tenants can continue as long term renters at rents less than rent control would allow and without fear of being involuntarily displaced, while still others can be paid hundreds, thousands or even tens of thousands of dollars to vacate their units.

Tenants—the class whom TOPA was designed to protect—thus receive a significant and tangible benefit from the legislation authorizing assignment or sale of their TOPA rights. As a result of the statute's enactment, they have something of value— assignable TOPA rights—for which a prospective assignee is likely to be willing to pay, and in many cases has paid, in order to acquire the property. Tenants may use such payments for moving expenses, for obtaining a new residence, or for other purposes. This result may not be Ms. Allman's ideal, but it was one of the legislature's chosen vehicles to benefit tenants, and we must give it effect.

Essentially, Ms. Allman is asking us on "public policy" grounds not to follow the language of the statute, but we have no license to substitute our views of public policy for those of the legislature. "It is not within the judicial function ... to rewrite the statute or to supply omissions in it, in order to make it more fair." *1841 Columbia Rd. Tenants' Ass'n v. District of Columbia Rental Hous. Comm'n,* 575 A.2d 306, 308 (D.C.1990) (citations and internal quotation marks omitted). "To supply omissions in [statutory language] transcends the judicial function." *Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (Brandeis, J.); *see also Watkins v. United States,* 846 A.2d 293, 299 (D.C.2004) (quoting *Iselin*). As we recently stated in *Medrano,* 885 A.2d at 314, "the balance of interests—of potential advantages and losses—in rental housing conversion has been struck by the legislature in establishing the requirements it did in [the Act]; and it is not for the courts to adjust that balance to correct perceived inequities."

D. *The alleged "lapse" of the assignment.*

Ms. Allman argues, in the alternative, that the McGlincheys' assignment to Mr. Bissey "lapsed" when the McGlincheys moved out of the property, and that Mr. Bissey no longer stands in the shoes of a tenant and therefore has no rights under TOPA. We do not agree.

Mr. and Mrs. McGlinchey executed the assignment of their TOPA rights to Mr. Bissey on December 28, 2002. At this time, they were tenants, and they were residing at the Fourth Street property. They executed the assignment in exchange for Mr. Bissey's agreement not to increase their rent in the event that he purchased the property.[6] The McGlincheys were still

---

6. The "bargain" negotiated by the McGlincheys was far less profitable to them than

some of those described by Mr. Eisen in his testimony. Section 42–3404.06, however, au-

Mr. Snyder's tenants on March 28, 2003, when Ms. Allman filed this action. It was not until a month later, on April 30, 2003, that they moved to their newly-purchased house.

Section 42–3404.06 permits the tenant to exercise, assign, or sell his or her rights "at any time in the process provided in this subchapter. . . ." There is nothing in the statute to suggest that, once the assignment has been executed, the validity of the contract between assignor and assignee depends upon, or may be affected by, subsequent events, nor does the Act state or imply that the end of the assignor's tenancy (resulting from his or her departure from the premises) would make the assignment lapse.

Further, focusing on the interests of the tenants which TOPA was principally intended to protect, those interests would be substantially impaired if we were to adopt the position urged upon us by Ms. Allman. A prospective purchaser of a tenant's TOPA rights would have little incentive to pay big money (or any money) for these rights if the assignment "lapsed" as soon as the tenant moved out.

■ Ms. Allman relies on the statutory definition of tenant:

> A tenant means a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy or benefits of a rental unit within a housing accommodation.

D.C.Code § 42–3401.03(17). She argues as follows:

> The McGlincheys were no longer tenants when the "negotiations" were instigated by Seller on September 26, 2003. Certainly a tenant's right to negotiate a purchase contract under TOPA does not continue once he has vacated a rental

property and is no longer a tenant. The only tenant to be negotiated with at the point in time that Seller opened negotiations on September 26, 2003 was Elizabeth Allman. The trial judge erred in allowing "negotiations" to include Mr. Bissey as a tenant.

Because, Ms. Allman suggests, an assignee can have no greater rights than an assignor, Mr. Bissey cannot be deemed a tenant. We agree with Mr. Snyder, however, that the statutory definition "states only what an entity must be in order to make an assignment in accordance with § 42–3404.06. It says nothing about a tenant having to remain a tenant in order to sustain the validity of the assignment." Mr. Snyder then concludes, and we again agree, that "[t]he only fair reading of the statute is that a tenant's assignment of his rights under TOPA is immediate and complete upon the execution of the assignment document." We discern nothing in the statute that suggests, or would countenance, a different result.

■ Because, for purposes of the Act, Mr. Bissey was a tenant, Mr. Snyder had the choice between two offers—Ms. Allman's and Mr. Bissey's—each of which came from a tenant. In this situation, the negotiation period having expired, Mr. Snyder was free to select Mr. Bissey's offer, for the determination as to which offer is more favorable is "a judgment which the Act in any case leaves entirely to the owner," *Medrano*, 885 A.2d at 314, without liability to the other tenants. *See* D.C.Code § 42–3404.10(2)(C) (2001). Ms. Allman's claim that her offer was more favorable than Mr. Bissey's does not entitle her to relief, for between the two tenants, the choice was Mr. Snyder's to make.

thorizes the assignment or sale of the tenant's TOPA rights "for any consideration which the tenant, in the tenant's sole discretion, finds acceptable."

## III.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is

 *Affirmed.*[7]

---

7. Ms. Allman's remaining contentions can be disposed of summarily:

1. According to Ms. Allman, the defendants failed to establish by affidavit or otherwise in conformity with Super. Ct. Civ. R. 56, that the McGlincheys assigned their rights to Mr. Bissey. This claim is presented for the first time on appeal, and we therefore review it for plain error. Substantially for the reasons stated by the defendants in their briefs, we find no plain error or, indeed, error at all. It is obvious from the record, including the depositions, that all parties believed, and indeed knew, that the McGlincheys had executed the assignment that is part of the record. Further, Ms. Allman never challenged Mr. Snyder's statement of undisputed facts, which reflects that the assignment was indeed made. If Ms. Allman had objected to the absence of an affidavit in the trial court, which she did not, the alleged deficiency could readily have been corrected in the interests of justice and to achieve a decision on the merits.

2. The trial judge granted Mr. Snyder's second motion for summary judgment because both Ms. Allman and Mr. Bissey had been afforded an opportunity, following the denial of the first motion, to negotiate with Mr. Snyder. This ruling did not contravene the principle that a party's position in settlement negotiations may not be received in evidence against that party as an admission of liability. *See Goon v. Gee Kung Tong,* 544 A.2d 277, 280 n. 9 (D.C.1988). Indeed, this principle is not implicated at all by the present record; Ms. Allman took no position in negotiations which could be, or was, used against her.