*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 20-CV-0442 & 20-CV-569

MATTHEW BOWYER, APPELLANT,

V.

PHILLIP B. REINHARDT, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAB-7244-16)

(Hon. John M. Campbell and Hon. Jason Park, Trial Judges)

(Argued November 9, 2021                    Decided July 14, 2022)

*Gwynne L. Booth*, with whom *Richard W. Luchs* was on the brief, for appellant.

*Richard J. Bianco*, with whom *Nicholas Loch* was on the brief, for appellee.

Before GLICKMAN and MCLEESE, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: In April 2015, appellant Matthew Bowyer entered into a contract to purchase a housing accommodation (the Property) and received a valid assignment of each tenant's right of first refusal to purchase ("offer of sale")

pursuant to the Tenant Opportunity to Purchase Act (TOPA).[1] The seller failed to convey, and Bowyer sued. After the Superior Court granted Bowyer an order for specific performance in April 2016, the court-appointed trustee authorized to sell the Property to Bowyer nonetheless reissued TOPA offers of sale to all the current tenants. Appellee Phillip Reinhardt, a tenant who had previously assigned his TOPA rights to Bowyer, responded to the second TOPA offer by submitting a "statement of interest" in purchasing the Property. Bowyer contested Reinhardt's right to proceed and reopened the litigation. Reinhardt filed a counterclaim, and the cases were consolidated.

The trial court ruled that the initial assignment of TOPA rights expired upon the reissuance and denied Bowyer's motions for summary judgment (1) seeking declaratory relief that he was the only person entitled to purchase the Property and, alternatively, (2) requesting a stay pending his receipt of another TOPA offer reflecting the tenants' assignments to Bowyer from the first offer of sale. The court then granted Reinhardt's motion for summary judgment for specific

---

[1] D.C. Code § 42-3404.02(a) (2020 Repl.) (before a property owner "may sell the housing accommodation" to a third party, the owner "shall give the tenant[s] an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale").

performance, ultimately ordering the trustee to convey the Property to Reinhardt on behalf of the seller. Bowyer argues on appeal that the trial court erred in each of these rulings. We agree; for reasons elaborated below, we reverse the rulings of the trial court, and conclude that Bowyer alone is entitled to purchase the Property.

## I.     Facts and Proceedings

On April 4, 2015, appellant Bowyer entered into a contract to purchase the Property from Viktor Sidabras. The designated settlement agent was L.P. Title, LLC, a company affiliated with a law firm, Arness & Associates, PLLC. In accordance with TOPA,[2] notices inviting offers of sale (TOPA offers) were sent to Property tenants Paul Hamill, Steven Laye, and Phillip Reinhardt on April 10, 2015. The notices listed Lane Potkin of Arness & Associates, PLLC as the owner's agent, and Jaclyn Williamowsky – an attorney with both the Arness firm and L.P. Title, LLC – as the contact. Each tenant assigned his "right to purchase

---

[2] See *supra* note 1.

the Property and the right attached to the TOPA Notice" to Bowyer within the next month.[3]  The assignment agreements read:

> [In] accordance with [TOPA], . . . Owner [Sidabras] provided Assignor [Hamill/Laye/Reinhardt] an Offer of Sale & Tenant Opportunity to Purchase <u>With</u> a Third Party Sale Contract . . . dated April 10, 2015 ("the TOPA Notice"); . . . Assignor now wishes to assign the right to purchase the Property and the right attached to the TOPA Notice (the "TOPA Rights") to Assignee [Bowyer] in consideration for [rent concessions and improvements to the property paid for by Assignee]; . . . Assignor hereby assigns and transfers to Assignee all of Assignor's TOPA Rights.  Assignee hereby assumes all of Assignor's TOPA Rights.  The TOPA Rights are hereby assigned in accordance with the terms hereof.

In return, Bowyer would extend the assignors' leases through September 30, 2017, for $3,750 per month, with rent increasing the same amount as real property taxes beginning in January 2016.  Bowyer would also make various repairs to the Property "within 60 days of settlement."

Sidabras, however, refused to convey the Property, and Bowyer filed suit on June 22, 2015.  Bowyer was represented by John Arness, a partner at the same firm as Williamowsky and Potkin.  Bowyer moved for entry of summary judgment on

---

[3] Reinhardt and Hamill assigned their rights on April 28, 2015, and Laye assigned his on May 1, 2015.

January 22, 2016, requesting specific performance from Sidabras and a court-appointed trustee to convey the Property. L.P. Title, LLC would again be the settlement agent. Before the court's decision, Williamowsky contacted the First American Title Insurance Company on April 5, 2016, to ask whether TOPA notices would have to be sent out again. That same day, the title company answered that, as more than 180 days had passed since the first TOPA offers had been sent out, the process would have to start over.[4] Williamowsky relayed this to Bowyer and the trustee, advising them that a second round of TOPA offers was necessary to ensure clear title to the Property. Bowyer did not object.

Bowyer's motion for summary judgment ordering specific performance was granted on April 27, 2016. By this point, one of the original tenants, Laye, had moved out, and James Reeves had taken his place. On May 13, 2016, Bowyer emailed the tenants in order to facilitate new assignments of their TOPA rights:

> Finally have some good news, although we are not quite over the finish line yet. The judge ruled in my favor on 4/27, which clears the way for the sale. I still have to wait for the 30 day appeal period to be over (end of this month essentially).

---

[4] D.C. Code § 42-3404.09(4) (2016) (if the owner has not sold or contracted for the sale of the property within 180 days of the TOPA offer, he must "comply anew" with the TOPA requirements).

> I also unfortunately have to redo the TOPA paperwork with all of you since so much time has passed. It will be the same agreement as before, and like last time I'll bring everything to you, but we will have to meet in person with the notary again. Previous agreement attached for reference. I have my attorney working on revised agreements for [Hamill] and [Reinhardt], and a new one for [Reeves] . . . .[5]

The second TOPA notices were sent to Reinhardt, Hamill, and Reeves on June 1, 2016. Williamowsky was listed as both the contact and the owner's agent. By this time, she had become a named partner at her firm, now called Arness, Potkin, & Williamowsky, PLLC.

On June 20, 2016, Reeves accepted the TOPA offer, as did Reinhardt on June 21, 2016. Bowyer objected, and Williamowsky sent the same letter to Reeves and Reinhardt on July 6, 2016, which read:

> This firm represents Matthew Bowyer . . . . We are in receipt of your proposed letter of acceptance of the owner's [TOPA offers] . . . . Please be advised that Mr.

---

[5] Reinhardt argued that this email was meant to inform the tenants that the second TOPA notices were forthcoming, and that it demonstrated Bowyer's participation in the reissuance. Bowyer, however, asserted that he was only speaking about the assignments of TOPA rights to him. This is a plausible reading of the email, as Bowyer mentioned bringing a notary, which was used during the original assignments but would not be necessary for TOPA notices.

Bowyer disputes your right to purchase the Property. It is our belief that your purported acceptance of the [TOPA offer] is ineffective due to one or more of the following three reasons.

First, in April of 2015, you validly and irrevocably assigned your TOPA rights to purchase the property to Matthew Bowyer. . . .

Second, [the April 27, 2016, order] grant[ed] specific performance as to Mr. Bowyer's prior purchase contract with the owner. Under [the TOPA statute], a sale pursuant to a court order is exempt from TOPA. Accordingly, Mr. Bowyer intends to file a motion to amend [the April 27, 2016, order] to expressly deny the existence of any TOPA rights. . . .

Third, even if you had not previously assigned your TOPA rights to Mr. Bowyer in April of 2015, your letter of acceptance is only one of two letters of acceptance received, in addition to Mr. Bowyer's continued interest in purchasing the housing accommodation. When multiple tenants in a single family housing accommodation exercise their TOPA rights in conflicting manners, the conflict has been interpreted by the DC Courts as nullifying the rights of the interested tenants to purchase, and turning the decision as to whom to sell back to the seller. . . .

Mr. Bowyer will pursue ratification of his contract and/or denial of any other third party TOPA rights, including yours, based on the foregoing positions and possibly others. . . .

Sincerely,

Arness, Potkin, & Williamowsky, PLLC

Williamowsky signed the letter.

On August 15, 2016, Reeves assigned his TOPA rights to Reinhardt. On September 29, 2016, again represented by John Arness, Bowyer filed a motion to reopen the case, seeking declaratory relief that he was the only one entitled to purchase the Property. The next day, Reinhardt filed a complaint against Bowyer, seeking specific performance (Count I) and alleging breach of contract for Bowyer's refusal to convey the Property (Count II). The cases were consolidated.

Bowyer filed for summary judgment on February 17, 2017, arguing that the tenants "irrevocably contracted to assign all of their rights to purchase the property under TOPA" to him in April 2015, "including the right of first refusal," and so he was still "the assignee of all tenant rights existing under the Act." Judge Campbell denied the motion on August 29, 2017, stating:

> Unhappily for Mr. Bowyer, the fact is that he acquiesced in a re-issuing of TOPA notices after the Court's April 2016 order granting him a right to purchase. The Court is unable to conclude, on these facts, that the new notices had no legal effect at all, and were no more than some kind of meaningless charade performed in order to make the title company happy. The notices were in the proper form, and explicitly gave the recipients (including Mr. Reinhardt) the right to purchase the property. On this motion, the Court cannot credit the argument that they had no actual meaning and conveyed no actual rights.

> Notably, Mr. Bowyer voluntarily caused the notices to be reissued. He did not have to comply with the title company's demand, and instead, for example, could have petitioned this Court for a declaration that TOPA rights had already been satisfied.

John Arness and the firm Arness, Potkin, & Williamowsky, PLLC withdrew as Bowyer's counsel on October 17, 2017, and Gwynne L. Booth, who was not affiliated with the Arness firm, took over as counsel.

Bowyer filed a second motion for summary judgment on October 25, 2017, arguing that even if he was not entitled to relief under the April 27, 2016, order for specific performance, the second TOPA offers had not been properly executed, as Bowyer should have received one as the assignee of TOPA rights from the prior round. He requested a stay of the case so that a third round of TOPA offers could be issued, this time including an offer to him as well.

Judge Campbell denied this motion on June 5, 2018. He reiterated the court's inability to conclude that the new TOPA offers had no legal significance, and he declined to dismiss the case, as Reinhardt had met the minimal pleading standards. The judge also declined to grant a stay of the case pending a third

TOPA round, believing that a stay would signal agreement with Bowyer's position that the original assignments were irrevocable.

On October 11, 2018, Reinhardt filed for partial summary judgment on Count I of his complaint (specific performance). Bowyer opposed the motion, conceding that "the reissued Offers of Sale gave Mr. Reinhardt a second bite at the apple to exercise his TOPA tenant rights," but arguing that the second round of offers was not "legally sufficient," as offers "were not sent to all persons entitled to receive them" because they were not sent to Bowyer as assignee. Judge Campbell granted Reinhardt's motion on August 21, 2019. His order read in relevant part:

> The core issue in this case is whether the assignment of TOPA rights under the first offer of sale carried over and remained valid as to the second offers of sale – a circumstance that the statute does not directly address. The Court concludes that those original assignments in effect expired when the second set of TOPA notices issued. It is true that the assignment contracts between [Bowyer] and each of the three original tenants do not contain language specifying any time limits, nor do they specify whether the assignment is revocable. . . . The contracts do, however, refer to the original offers of sale issued on April 10, 2015, thereby at least implicitly tying the assignment to that specific offer. Given this specific language, and the requirement that the Court construe any ambiguities in favor of the tenant, the Court has determined that the original assignment contracts applied only to the TOPA rights created by the first offers of sale.

> When new offers were issued, the tenants' TOPA rights were triggered anew, which allowed a tenant, such as [Reinhardt], to exercise his right to purchase. [Bowyer] therefore does not have any TOPA rights in connection with the second offer of sale.

Judge Campbell also stated that Bowyer had "agreed to have the TOPA notices reissued." Further, he noted that the former tenant, Laye, was no longer a tenant when the second round commenced. Consequently, even if the first TOPA assignments had not expired, neither Laye nor his assignee, Bowyer, had a right to a second TOPA offer.

Bowyer filed for summary judgment on Count II of Reinhardt's complaint (breach of contract) on March 25, 2020. Judge Park granted the motion on July 6, 2020, concluding that "even if the second TOPA offers were communicated and transmitted" by Bowyer, they "could not have represented offers of sale issued on his own behalf" because TOPA offers must be provided by the property owner, and Bowyer was merely a prospective buyer who, at most, had failed to challenge the necessity of the offers. Thus, no contract existed between Bowyer and Reinhardt. Consistent with Judge Campbell's grant of specific performance for Reinhardt against Bowyer, Judge Park ordered specific performance for Reinhardt against Sidabras.

Bowyer appeals Judge Campbell's (1) August 29, 2017, and (2) June 5, 2018, denials of his motions for summary judgment,[6] as well as (3) the judge's August 21, 2019, grant of Reinhardt's motion for partial summary judgment on Count I of his complaint,[7] and (4) Judge Park's July 6, 2020, judgment for Reinhardt granting specific performance of the sale of the Property from Sidabras to Reinhardt.

## II.    Analysis

This court reviews a grant or denial of summary judgment de novo and applies the same standard as the trial court does in considering the motion for

---

[6] (1) Denying Bowyer declaratory relief enforcing the April 27, 2016, specific performance order entitling him to purchase the Property, as Bowyer had "acquiesced in a re-issuing of TOPA notices" after that order and thus "voluntarily caused the notices to be reissued"; and (2) refusing to stay the case pending a TOPA offer to Bowyer, as that would indicate agreement with Bowyer's argument that the original TOPA assignments were irrevocable.

[7] Ruling that the first TOPA rights expired upon issuance of the second offers, and thus that Reinhardt, as a second-round TOPA offeree and assignee of a co-tenant's TOPA rights, was entitled to specific performance.

summary judgment.[8]   Summary judgment is proper if, when the facts are viewed "in the light most favorable to the non-moving party[,] . . . there [are] no genuine issue[s] of material fact and [ ] the moving party is entitled to judgment as a matter of law."[9]   On appeal, this court is required to "'conduct an independent review of the record . . . [to] determine whether any relevant factual issues exist by examining and taking into account the pleadings, depositions, and admissions along with any affidavits on file, construing such material in the light most favorable to the party opposing the motion.'"[10]

We are confronted here with the required application of two concepts – "assignment" and "acquiescence" – either of which arguably could determine the outcome.   As elaborated below, however, given the reach of Reinhardt's assignment of his "TOPA Rights" to Bowyer during the first round of TOPA offers, our resolution of the assignment issue will be dispositive, absent sufficient

---

[8] *See District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d 1144, 1155 (D.C. 2009); *see also Aziken v. District of Columbia*, 194 A.3d 31, 34 (D.C. 2018).

[9] Super. Ct. Civ. R. 56(c); *Hosp. Temps Corp. v. District of Columbia*, 926 A.2d 131, 134 (D.C. 2007).

[10] *District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d at 1155 (quoting *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C. 1991)).

record evidence that Bowyer acquiesced in the second round of offers in a way that nullified the assignments.

### A. The Tenants' Assignments to Bowyer

We begin with "assignment," governed by our standard for reviewing a contract – "a legal question, which this court reviews de novo"[11] unless "probative extrinsic evidence" is admitted to "determine what a reasonable person in the position of the parties would have thought the disputed language meant."[12] Neither party, however, cites extrinsic evidence of record, or suggests a remand for findings, claimed to be essential to our interpretation of "assignment" as applied here.

---

[11] *Abdelrhman v. Ackerman,* 76 A.3d 883, 887 (D.C. 2013) (quoting *Tillery v. District of Columbia Contract Appeals Bd.,* 912 A.2d 1169, 1176 (D.C. 2006)).

[12] *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009) (quoting *In re Bailey*, 883 A.2d 106, 118 (D.C. 2005) (internal quotation marks omitted)); *see also Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092 (D.C. 1988) ("The meaning of an integrated contract is an issue for the finder of fact only if the contractual language is ambiguous, i.e., where its interpretation depends upon the credibility of extrinsic evidence or upon a choice of reasonable inferences from such evidence.") (internal citation omitted).

In granting tenants the first "opportunity to purchase [a] housing accommodation" offered for sale,[13] TOPA authorizes the tenant to "exercise rights [of purchase] . . . by assigning or selling those rights to any party, . . . structured in any way the tenant, in the tenant's sole discretion, finds acceptable."[14] The right of purchase, therefore, includes a right of assignment.

Consistent with this authority, all assignments during the first round of TOPA offers in this case defined assignable "TOPA Rights" as "[1] the right to purchase the Property and [2] the right attached to the April 10, 2015 TOPA Notice."[15] While the second-expressed "right" is clearly limited to a purchase or assignment authorized by the April 10, 2015, TOPA Notice, the initial, general phrase in the assignment – "the right to purchase the Property" – arguably connects with that TOPA-specific phrase and confers two distinct rights to Bowyer: (1) any future right the tenant may receive "to purchase the Property" from any lawful

---

[13] D.C. Code § 42-3404.02(a).

[14] *Allman v. Snyder*, 888 A.2d 1161, 1166 (D.C. 2005) (emphasis omitted).

[15] After folding into "purchase" the right to "assign," we note that the "TOPA rights" at issue would read as follows: each tenant's "[1] right to purchase [or assign] the Property and [2] the right [of purchase or assignment] attached to the [specified] TOPA Notice."

seller, and (2) the narrower, present right "attached to the [April 10, 2015] TOPA notice" to purchase the Property from Sidabras.

Judge Campbell found no such distinct, future right. He observed that "the assignment contracts between [Bowyer] and each of the three original tenants [Reinhardt, Hamill, and Laye[16]] . . . refer to the original offers of sale issued on April 10, 2015, thereby at least implicitly tying the assignment to that specific offer." The "original assignment contracts," he concluded, "applied only to the TOPA rights created by the first offers of sale." The judge accordingly understood the 2015 TOPA Notice to confer a single right, apparently believing that the first, generic phrase ("to purchase the Property") was mere context for the specific TOPA Notice at issue, despite language in each assignment stating that tenants Hamill, Laye, and Reinhardt "wishe[d] to assign the right to purchase the property *and* the right attached to the TOPA Notice" to Bowyer (emphasis added).[17]

---

[16] Laye moved away from the Property after assigning his right to Bowyer, but before Bowyer obtained the April 27, 2016, order for specific performance against Sidabras. By that time, a new tenant, Reeves, had moved in.

[17] Judge Campbell acknowledged that the scope of the assignments was ambiguous, but he concluded that "the original assignment contracts applied only to the TOPA rights created by the first offers of sale" because of the "specific language" of the assignment contracts when coupled with "the requirement that the Court construe any ambiguities in favor of the tenant." To the contrary, the

(continued…)

Although the interpretive question has no swift answer, we are persuaded, contrary to Judge Campbell, that the plain words of each assignment create two distinct, present and future, rights. Simply put, there would be no reason for the first phrase, "*the right* to purchase the Property" – followed by "*and*" coupled with a more specific addition of "*the right* attached to the TOPA Notice" – unless each of these ostensibly dual rights (general and specific) had a legitimate, separate purpose. And it is clear to us that each announced right satisfies that test.

The legitimate, separate purpose of the second assignment category is satisfied, of course, by the "opportunity to purchase" the Property specified in the 2015 TOPA Notice. The legitimate, separate purpose of the first category would be to facilitate the purchase or assignment of the Property under any other discernible, lawful circumstance. For example, it would protect Bowyer's right to purchase the Property ahead of Reinhardt if the contract between Bowyer and Sidabras fell through and Reinhardt either obtained a new TOPA right from a later

_____

(…continued)

provision of the TOPA statute pertaining to ambiguities does not apply in the way the judge used it. Rather, D.C. Code § 42-3405.11 (2019), titled "Statutory Construction," instructs that ambiguities within TOPA itself – not in TOPA offers or assignments – are to be constructed in the tenants' favor. *See 1836 S St. Tenants Ass'n, Inc. v. Estate of Battle*, 965 A.2d 832, 838 (D.C. 2009) (noting that the statutory directive pertains to "ambiguity in TOPA's language").

offer of sale, or obtained a purportedly exclusive contract to purchase the Property from Sidabras.

Accordingly, where statutory interpretation, unaided by extrinsic evidence, must determine the outcome, the plainest reading of the governing language must be honored,[18] especially given the complex TOPA statutory structure where – as the record evidences here – realistic but complicated scenarios can be fashioned and numerous competing individuals can be affected. Contrary to Judge Campbell's ruling, therefore, the first assignments to Bowyer were not obviously limited "to the TOPA rights created by the first offers of sale" on April 10, 2015; rather, they were structured to also assign a future "right to purchase the Property" ahead of any other eventual claim by Reinhardt.

---

[18] "A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008) (internal quotation marks, ellipses, and citation omitted). *See also N.P.P. Contrs. v. John Canning & Co.*, 715 A.2d 139, 142 (D.C. 1998) (determining that a clause covering "any and all claims and liabilities" in a contract "plainly reveal[ed] an intent to encompass" all claims, and noting that when terms "are so broad and comprehensive, the presumption is that if the parties had intended some limitation of the all-embracing language, they would have expressed such limitation" (internal quotation marks and citations omitted)).

### B.    Bowyer's Acquiescence

For sake of argument we shall assume that Bowyer, given his unqualified "right to purchase the Property," nonetheless "acquiesced" in the second round of TOPA offers.  Obviously, there is more than one possible level of acquiescence. Reinhardt, for example, argued for the most extreme level: that Bowyer – merely by failing to object – agreed that the second round of offers was legally required, thereby nullifying the first round completely and thus revoking the assignments and even the trial court's specific performance order.  If this had been the basis for defining Bowyer's acquiescence, he would lose this appeal, as he would have no remaining contractual right to purchase the Property.

Bowyer's argument against prejudicial acquiescence is premised on a limited, lower level of agreement to the second offers: his first-round assignments were allegedly preserved by his May 13, 2016, email to the tenants[19] (confirmed by Williamowsky's follow-up letter of July 6, 2016).[20]   These communications explained that the second offers were legally required only because Bowyer had

---

[19] See *supra* note 5, and accompanying text.

[20] See *supra* text at 7.

"to redo the TOPA paperwork with all of [the tenants] since so much time [had] passed" (i.e., more than 180 days since the first TOPA offers), and under the statute – as Bowyer understood it – he had to "comply anew" with the TOPA requirements).[21] Put more simply, for merely technical/legal reasons, the "paperwork" had to be redone with the tenants premised on Bowyer's assumption of the same assignments.

Accordingly, in light of Reinhardt's and Hamill's first-round assignments to Bowyer of an unqualified "right to purchase the Property," the question becomes whether any level of acquiescence short of renouncing the first round of TOPA offers and assignments – in particular, acquiescence attributed to a mere failure to object to the second round based on the assumption of a "redo" – would make a difference here.

---

[21] Counsel for the title company explained that the second round was necessary because Bowyer's contract with Sidabras to purchase the Property "was dated April 10, 2015. It has been well over 180 days since the first TOPA offer of Sale, and so you must start from scratch again." Counsel was referring to D.C. Code § 42-3404.09(4), which directs that "the owner shall comply anew" with TOPA "[i]f 180 days elapse from the date of a valid [TOPA] offer . . . and the owner has not sold or contracted for the sale of the accommodation." The title company was wrong; Bowyer and Sidabras had a contract, and thus the 180-day limitation did not apply.

We believe not. Given Bowyer's limited reason for accepting the second round of TOPA offers – a reason Reinhardt does not challenge with any reference to or demand for extrinsic evidence[22] – we cannot perceive any sound basis for concluding that Bowyer's acceptance of the second round reflected acquiescence tantamount to rejecting the first round completely. We therefore conclude that Bowyer's first-round assignments from Reinhardt and Hamill conveying "the right to purchase the Property" without limitation survived, and included the later, second-round assignment from Reeves to Reinhardt. Bowyer consequently retained the right to enforce his contract with Sidabras pursuant to his first-round assignment from Reinhardt, justifying enforcement of the trial court's specific performance order.[23]

---

[22] See *supra* note 12.

[23] If, under the circumstances, the trial court had found that Bowyer objected to the second round TOPA offers in light of his May 13, 2016, email to the tenants and Williamowsky's follow-up letter of July 6, 2016 – and further ruled, correctly, that the second round had not been required by TOPA – then Bowyer's right to purchase would have been traceable directly to the trial court's specific performance order, without further analysis of the assignments or the second round of offers.

## IV.  Conclusion

The TOPA rights assigned to Bowyer were not limited to the rights of the tenants at the time of the April 10, 2015, TOPA offers; these (first-round) assignments also encompassed the tenants' future rights to purchase the Property as well.  Therefore, on the assumption that the second-round (future) TOPA offers were appropriate,[24] Bowyer was entitled to preemptive assignments of Hamill's and Reinhardt's second TOPA offers, including assignment of the second-round TOPA offer to Reeves which Reinhardt acquired – clearing the way for enforcement of the trial court's April 27, 2016, order granting specific performance of appellant's contract to purchase the Property.[25]

For the reasons elaborated above, we therefore (1) reverse Judge Campbell's August 29, 2017, order denying Bowyer's first motion for summary judgment (seeking enforcement of April 27, 2016, specific enforcement order); (2) reverse

---

[24] *But see supra* note 21.

[25] Indeed, even if Bowyer could be found to have "acquiesced" in the second round to the extent of forfeiting his right to the April 10, 2015, TOPA offers (thereby losing entitlement to the April 2016 specific enforcement order), he still would have retained the rights to the second TOPA offers entitling him to seek specific enforcement in a new proceeding, assuming appellant's contract with Sidabras remained enforceable – a scenario we do not address.

Judge Campbell's June 5, 2018, order denying Bowyer's second motion for summary judgment (alleging irrevocable initial TOPA assignment to him and, alternatively, deficient second TOPA notices); (3) reverse Judge Campbell's August 21, 2019, order granting Reinhardt's motion for summary judgment on Count I of his complaint (seeking specific performance of contract through assignment of TOPA rights from tenant Reeves); (4) reverse in part Judge Park's July 6, 2020, order granting specific performance for Reinhardt from Sidabras; and (5) affirm the grant of Bowyer's second motion for summary judgment on Count II of Reinhardt's complaint (breach of contract).

*So ordered.*