# District of Columbia
# Court of Appeals

**Nos. 15-CV-448, 15-CV-486, 15-CV-630 & 15-CV-710**

DAVID M. VAN LEEUWEN, *et al.*,

Appellants/Cross Appellees,

v.

ERIC BLODNIKAR, *et al.*,

Appellees/Cross Appellants.



CAB-4227-13

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: THOMPSON and MCLEESE, *Associate Judges*; and BELSON, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the Superior Court is affirmed in part and vacated in part, and the case is remanded for further proceedings.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: August 11, 2016.

Opinion by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

FILED **8/11/16**
District of Columbia
Court of Appeals

Nos. 15-CV-448, 15-CV-486, 15-CV-630, & 15-CV-710

Julio Castillo
Clerk of Court

DAVID M. VAN LEEUWEN, ET AL., APPELLANTS/CROSS-APPELLEES,

V.

ERIC BLODNIKAR, ET AL., APPELLEES/CROSS-APPELLANTS,

and

SAM H. PAYLOR, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAB-3502-13)

(Hon. Stuart G. Nash, Trial Judge)

(Argued March 10, 2016            Decided August 11, 2016)

*Carol S. Blumenthal* for appellants/cross-appellees David M. van Leeuwen and Meghan R. van Leeuwen.

*Lorenzo B. Cellini*, with whom *Jonathan K. Tycko* was on the brief, for appellees/cross-appellants Eric Blodnikar and Terra Blodnikar.

*John F. Pressley, Jr.*, for appellee Sam H. Paylor.

Before THOMPSON and MCLEESE, *Associate Judges*, and BELSON, *Senior Judge*.

MCLEESE, *Associate Judge*: After a bench trial, the trial court ruled that appellees/cross-appellants Eric and Terra Blodnikar have an enforceable contract to purchase a building owned by appellee Sam H. Paylor. Appellants/cross-appellees David M. and Meghan R. van Leeuwen challenge that ruling, arguing that they rather than the Blodnikars have an enforceable contract to purchase the building. In their cross-appeal, the Blodnikars argue that the trial court erroneously failed to award them attorney's fees against Mr. Paylor. We affirm in part, vacate in part, and remand the case for further proceedings.

## I.

The following facts appear to be undisputed. Mr. Paylor owned a three-unit apartment building subject to the Tenant Opportunity to Purchase Act of 1980 (TOPA), D.C. Code § 42-3404.01 et seq. (2012 Repl.). On February 12, 2013, Mr. Paylor sent the building's tenants an offer of sale, giving the tenants an opportunity to purchase the building. The offer of sale stated a price of $480,000 and included the following material term: "5% earnest money deposit with a contract, and the balance at settlement."

On February 26, 2013, Mr. Paylor and the van Leeuwens -- who were not

tenants of the building -- entered into a contract for the van Leeuwens to buy the building for $538,000. The van Leeuwens deposited $25,000 in earnest money. On March 1 and 2, 2013, all of the buildings' tenants assigned Mr. Blodnikar their rights under TOPA to purchase the building. *See* D.C. Code § 42-3404.06 (tenants may assign rights under TOPA). On March 4, 2013, the Blodnikars sent a letter to Mr. Paylor stating that the Blodnikars were accepting the February 12, 2013, offer of sale. The Blodnikars did not include a deposit with their letter.

On March 10, 2013, Mr. Paylor sent the tenants a second offer of sale, this time with a price of $538,000. Mr. Paylor attached the contract with the van Leeuwens. In response, the Blodnikars sent letters to Mr. Paylor stating that they had already accepted the first offer of sale and that Mr. Paylor therefore could not lawfully sell the property to the van Leeuwens.

On March 31, 2013, one of the tenants was evicted. On April 8, 2013, Mr. Paylor leased the vacant apartment to the van Leeuwens. Later in April 2013, Mr. Paylor sent a third offer of sale to the tenants, again at a price of $538,000 and again attaching the contract between Mr. Paylor and the van Leeuwens.

The van Leeuwens filed a complaint seeking, among other things, a

declaration that their contract with Mr. Paylor was valid. The Blodnikars filed a cross-complaint seeking a declaration that they had validly accepted the first offer of sale. Among other things, the Blodnikars also sought an award of attorney's fees against Mr. Paylor and the van Leeuwens.

The van Leeuwens and Blodnikars filed cross-motions for partial summary judgment. The trial court denied both motions, but ruled as a matter of law that the Blodnikars' March 4 letter was an acceptance of Mr. Paylor's first offer of sale and that the Blodnikars were not obliged to deposit earnest money at the time of acceptance. After a bench trial, the trial court ruled that the Blodnikars had a valid contract to buy the building. The trial court therefore directed Mr. Paylor to sell the building to the Blodnikars. The trial court denied the Blodnikars' request for an award of attorney's fees, finding among other things that Mr. Paylor acted in good faith.

## II.

The van Leeuwens first argue that no valid contract ever formed between Mr. Paylor and the Blodnikars. Specifically, the van Leeuwens argue that, under the terms of the first offer of sale, the Blodnikars were required to submit a 5%

earnest-money deposit as a condition of accepting the offer of sale. According to the van Leeuwens, the Blodnikars' failure to submit the deposit means that the Blodnikars never accepted the offer and instead only indicated an intent to negotiate a contract in the future. No party argues that the offer of sale was ambiguous and that the proper interpretation of the offer of sale should have been submitted to the jury. The van Leeuwens and Blodnikars instead each advance their own interpretations of the terms of first offer of sale, and they agree that we review the trial court's interpretation of the offer of sale de novo. Accepting the issue as the parties have framed it, we uphold the trial court's ruling.

Under TOPA, a tenant (or, as here, the assignee of a tenant) can create a binding contract by accepting the material terms of an owner's offer of sale. *1836 S St. Tenants' Ass'n v. Estate of Battle*, 965 A.2d 832, 838-46 (D.C. 2009). After such an acceptance, the parties may negotiate over non-material terms, prepare a final contract, and proceed to settlement. *Id.* at 839-41. The principal issue in this case is whether the Blodnikars accepted the material terms of the first offer of sale. The van Leeuwens rely on the language in the first offer of sale requiring a "5% earnest money deposit with a contract, and the balance at settlement." Considered in isolation, that language is unclear as to precisely when the deposit must be made. The language does not expressly require that the deposit be paid at the

moment of acceptance. In addition, as previously noted, TOPA gives rise to the possibility that there will be two different versions of a contract: an initial version formed by the tenant's acceptance of the material terms of an offer of sale, and a fuller written version created after the parties have agreed on all of the terms of a contract. *Id.* at 838-44; *cf.* D.C. Code § 42-3404.10 (2)(A) ("Upon receipt of a letter of intent from a tenant . . . the owner shall afford the tenants a reasonable period to negotiate a contract of sale . . . ."). The offer of sale does not explicitly indicate whether earnest money must be paid at time of acceptance or instead at the time the contract is finalized.

The Blodnikars point to several provisions in the offer of sale that tend to indicate that the deposit was to be made at the time the contract was finalized, not at the time of acceptance. Specifically, several provisions of the first offer of sale state that tenants could respond by a "written statement accepting the owner's offer to sell." The absence from these provisions of any reference to payment of earnest money tends to imply that contemporaneous deposit of earnest money was not a condition of acceptance. Similarly, the first offer of sale explicitly contemplates a process of post-acceptance negotiation to finalize a ratified contract. The subsequent reference to payment of a deposit "with a contract" is thus more naturally read as referring to the ratified contract mentioned in the preceding

paragraphs of the offer of sale. In sum, we agree that the first offer of sale, read as a whole, is better understood to require payment of the deposit at the time a contact is ratified, not at the time of initial acceptance. We therefore uphold the trial court's ruling that the Blodnikars validly accepted the first offer of sale.

## III.

The van Leeuwens advance an alternative argument: (1) even if the Blodnikars validly accepted the first offer of sale, the van Leeuwens became tenants before the building was actually sold; (2) the van Leeuwens therefore had the right under TOPA to submit a competing offer to purchase; and (3) Mr. Paylor was free under TOPA to accept the van Leeuwens' offer over the Blodnikars' offer. The trial court rejected that argument, stating that, once the first offer of sale was accepted and a valid contract to sell the building had formed, the van Leeuwens could not become tenants, obtain TOPA rights, and prevent the sale pursuant to the earlier contract. We find the matter to be more complicated than the trial court's ruling suggests. We therefore vacate the judgment and remand for further consideration of the van Leeuwens' alternative argument.

In some circumstances, TOPA does permit a subsequent competing offer by

one tenant to pose an obstacle to the completion of a sale to another tenant who had previously accepted an offer of sale. Specifically, under the provisions applicable to two-to-four-unit buildings, even if an individual tenant accepts an offer of sale, thereby creating a potentially binding contract, the owner and that tenant are not necessarily in a position to go forward immediately with a sale of the building. *See* D.C. Code § 42-3404.10; *1836 S St.*, 965 A.2d at 841. Rather, if another tenant timely submits an expression of interest, the owner must afford each tenant who did so a period of at least ninety days to negotiate over the sale of the building. D.C. Code § 42-3404.10 (2)(A); *1836 S St.*, 965 A.2d at 841. At the end of that period, the owner is not required to honor an acceptance that was submitted first and instead may choose a competing bid that the owner prefers. D.C. Code § 42-3404.10 (2)(C); *1836 S St.*, 965 A.2d at 841.

If section 42-3404.10 applies in the present circumstances, then Mr. Paylor arguably was free to enter into a contract with the van Leeuwens for the purchase of the building at the higher price. The trial court appeared to imply that tenants whose tenancy begins after an offer of sale has been accepted have no rights under section 42-3404.10. We disagree with that broad conclusion. For example, consider the following situation: (1) an owner sends tenants a notice of intent to sell a four-unit building; (2) fifteen days later, one tenant timely accepts the

material terms of the offer of sale; (3) the next day, a new tenant signs a lease, and (4) the new tenant then immediately submits a timely statement of interest in purchasing the building. Nothing in the text of section 42-3404.10 suggests that the new tenant in that situation has no rights under TOPA. Moreover, a general provision of TOPA points in the opposite direction. *See* D.C. Code § 42-3404.06 (exercise of TOPA rights "may occur at any time in the process provided by the subchapter").

This case raises a number of additional complications not presented in the situation just posited. For example, the Blodnikars argue that their acceptance was a joint response of all tenants, rather than an individual response, and that Mr. Paylor therefore could not lawfully disregard their acceptance in favor of the van Leeuwens' later response. *See* D.C. Code § 42-3404.10 (1) (owner's obligation to consider later statement of interest by individual tenant applies "if the tenants acting jointly have failed to submit a written statement of interest"). Other possible questions include (1) whether the Blodnikars' acceptance was submitted promptly enough to qualify as a joint response, D.C. Code § 42-3404.10 (1) (joint response must be submitted within fifteen days); (2) whether the van Leeuwens' later individual response was timely under section 42-3404.10 (1) (in absence of timely joint response, individual response may be submitted within seven

additional days); and (3) if either the Blodnikars' acceptance or the van Leeuwens' later response was not timely under these provisions, what that would mean for the proper analysis of their respective rights, if any, under TOPA. The Blodnikars further argue that section 42-3404.10 is inapplicable because the van Leeuwens were not bona fide tenants and therefore could not exercise rights under TOPA.

The trial court has not yet addressed these questions and the parties have not fully briefed them. We therefore remand the case to the trial court to address those issues in the first instance. *See, e.g.*, *Folks v. District of Columbia*, 93 A.3d 681, 686 (D.C. 2014) ("The trial court did not definitively resolve that issue. We exercise our discretion to leave that issue for resolution by the trial court in the first instance.").

**IV.**

The Blodnikars argue in the cross-appeal that the trial court erred by denying their request for attorney's fees against Mr. Paylor. (The Blodnikars do not appear to challenge the denial of their request for an award of attorney's fees against the van Leeuwens.) We affirm the trial court's ruling.

The Blodnikars first argue that the trial court acted precipitously, by deciding the attorney's fee issue at the close of trial rather than waiting for the Blodnikars to file a motion under Rule 54 (d) of the Superior Court Rules of Civil Procedure. The Blodnikars did not raise that objection when the trial court ruled on the request for attorney's fees at the close of the trial. They remained silent even when the trial court expressly asked the parties whether they had any further requests of the trial court. Moreover, although the Blodnikars filed a post-judgment motion seeking revisions in the judgment, they did not -- in that motion or in any other way -- raise in the trial court the contention that the trial court was required to await the filing of a post-judgment motion before ruling on the request for attorney's fees. Under the circumstances, we do not view the Blodnikars as having properly preserved this procedural objection in the trial court. *Cf., e.g.*, *District of Columbia Hous. Auth. v. District of Columbia Office of Human Rights*, 881 A.2d 600, 613-14 (D.C. 2005) ("When [petitioner] was before the [agency], it was content to have the case decided summarily. As [petitioner] did not request a hearing or object to the [agency's] decision to render a summary determination . . . , and as [petitioner] failed even to seek reopening of the case when it moved for reconsideration, [petitioner] forfeited its claim that a hearing was necessary. Acquiescence is waiver, and nothing in this case justifies a deviation from that general rule.").

Second, the Blodnikars challenge the trial court's ruling that Mr. Paylor acted in good faith. In the trial court, however, the Blodnikars expressly stated that they were not contending that Mr. Paylor acted in bad faith. The Blodnikars may not take a contrary position in this court. *Brown v. United* States, 864 A.2d 996, 1001 (D.C. 2005) (parties "may not take one position at trial and a contradictory position on appeal") (internal quotation marks omitted).

Finally, the Blodnikars argue for the first time in their reply brief that a prevailing party in a TOPA action should presumptively be awarded attorney's fees, even in the absence of bad faith on the part of the losing party. We do not ordinarily address arguments raised for the first time in a reply brief. *E.g.*, *Howell v. District of Columbia Zoning Comm'n*, 97 A.3d 579, 584 n.6 (D.C. 2014). We adhere to that policy here.

The judgment of the Superior Court is therefore affirmed in part and vacated in part, and the case is remanded for further proceedings.

*So ordered.*