*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 19-CV-0332 & 19-CV-0442

1305 RHODE ISLAND AVENUE NW, LLC, APPELLANT,

V.

JOHN D. MUSSELLS, *et al*., APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(2016-CA-008570-B)

(Hon. Neal E. Kravitz, Motions Judge)
(Hon. Fern F. Saddler, Trial Judge)

(Argued June 11, 2020            Decided December 22, 2022)[*]

*Robert C. Gill*, with whom *Kyra A. Smerkanich*, was on the brief, for appellant.

*Kenneth C. Crickman*, with whom *Robert C. Cooper*, was on the brief, for appellees.

Before DEAHL, *Associate Judge*, and RUIZ and GLICKMAN,[**] *Senior Judges*.

---

[*] The court issued an Amended Order on December 22, 2022, with opinion to follow, that reversed the judgment and remanded the case for entry of specific orders and further proceedings. This opinion explains the reasoning for the court's Amended Order. The mandate issued on December 27, 2022, has been recalled; the court will issue a new mandate in due course. *See* D.C. App. R. 41 (b).

The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being publish on the court's own motion.

[**] Judge Glickman was an Associate Judge of the Court at the time of

RUIZ, *Senior Judge*:    This case concerns the exercise and assignment of tenants' rights under the District of Columbia Tenant Opportunity to Purchase Act ("TOPA"). D.C. Code §§ 42-3404.01 *et seq.*[1]    At issue is whether appellant, 1305 Rhode Island Avenue NW, LLC, as the tenants' assignee, or appellees John and Premila Mussells are entitled to purchase the property occupied by the tenants from its owner, appellee the Michael John Furman Living Trust (the "Trust"). The trial court did not recognize the priority due under TOPA to appellant's contract as assignee of the tenants' right of first refusal due to perceived deficiencies in the tenants' assertion and assignment of their TOPA rights. Giving effect to the assertion and assignment of TOPA rights, we reverse the judgment for appellees and remand the case to the trial court for entry of judgment for appellant, an order granting specific performance of the sales contract between appellant and the Trust and for further proceedings consistent with this opinion.

## I.    Factual and Procedural Background

The property at issue, located at 1305 Rhode Island Avenue, Northwest, in

argument.    He began his service as a Senior Judge on December 21, 2022.

[1]    Citation references are to the current codification.    Amendments to TOPA since the events in this case have not changed the provisions relevant to this opinion.

Washington, District of Columbia (the "Property"), is comprised of four rental units and housed eight tenants. On July 29, 2016, the Mussells signed a sales contract to buy the Property from the Trust for $1,655,000 (the "Mussells Contract").

Per D.C. Code § 42-3404.02(a), the Trust served all eight tenants an Offer of Sale Notice, dated August 11, 2016, notifying them of the Mussells Contract. The District of Columbia Housing Regulation Administration ("DCHRA") received the Offer of Sale Notice on August 16, 2016. Upon receipt of the Offer of Sale Notice, Arian Attar, who was a co-tenant of Unit 3 and a law student, researched TOPA and reached out to other tenants for a collective response. Attar, on behalf of the eight tenants, sent a "Letter of Interest in Purchasing" the Property, dated August 30, 2016, via United States Postal Service ("USPS") Priority Mail ("the Collective Interest Letter"). Subsequently, Bridget Morstatt, a co-tenant of Unit 2, submitted her individual written statement of interest to purchase the Property, dated September 1, 2016, to the Trust and DCHRA via certified mail (the "Morstatt Letter"). DCHRA received the Collective Interest Letter on August 31, 2016, and the Morstatt Letter on September 7, 2016.

Attar met with the Mussells to gauge their interest in purchasing the eight tenants' TOPA rights, but "received affirmative nos." Thus, to vindicate their

collective TOPA rights, the eight tenants of the Property entered into an "Assignment of TOPA Rights" with appellant on November 8, 2016 (the "Assignment Contract"). Appellant, as assignee, exercised the tenants' right of first refusal, D.C. Code § 42-3404.08, and entered into a contract to purchase the Property from the Trust matching the price of the Mussells Contract on November 30, 2016 (the "1305 Rhode Island Contract").

The Mussells sued appellant and the Trustees seeking specific performance of their contract and a declaration that the 1305 Rhode Island Contract was null and void. The Trust filed a counterclaim against the Mussells and a crossclaim against appellant requesting a declaration from the court as to which of the two contracts it should honor and an award of attorney's fees and costs pursuant to D.C. Code § 42-3405.03. Judge Neal Kravitz ruled that under TOPA, D.C. Code § 42-3404.10(1), the tenants were required to send their Collective Interest Letter by certified mail and they had not, rendering it invalid. However, he denied the Mussells' motion for summary judgment because the Mussells had not shown, as a matter of law, that Morstatt, whose letter was sent by certified mail, had "forfeit[ed] [her asserted individual TOPA rights] by assigning them as a part of a group of tenants, some of whom have not made valid assertions of their rights."

The case was transferred to Judge Fern Saddler for trial. After hearing

testimony from Morstatt, James Anderson (as a principal of appellant), and Attar, the judge made oral findings of fact and conclusions of law. Judge Saddler concluded that (1) the Morstatt Letter was an invalid assertion of her individual TOPA rights because she had already invoked her TOPA rights collectively with her co-tenants of Unit 2 through the Collective Interest Letter, and an owner of property "must entertain only one tenant offer from each rental unit," citing *Morrison v. Branch Banking & Trust of Virginia*, 25 A.3d 930 (D.C. 2011); (2) Morstatt's individual TOPA rights were never properly assigned to appellant because "none of the parties intended to assign Morstatt's individual TOPA rights at the time of signing the [Assignment Contract]"; and (3) the Assignment Contract was legally ineffective because it was conditioned on the Collective Interest Letter, which was invalid. The trial court granted judgment to appellees declaring that the Trust had "the right and obligation' to sell the Property pursuant to the Mussells Contract, that appellant had "no right to purchase the Property," and ordered appellant to pay the Trust's attorney's fees and costs. On appeal to our court, appellant challenges Judge Kravitz's pretrial ruling that the Collective Interest Letter was improperly delivered, which rendered it invalid, and Judge Saddler's judgment for appellees following the bench trial.

## II.    Analysis

Appellant claims it was entitled to purchase the property from the Trust because its contract exercised the tenant's right of first refusal to match the Mussells' third party offer. The validity of the contract between appellant and the Trust turns on whether the tenants, collectively or individually, validly exercised their TOPA rights in response to the Offer of Sale Notice they received and assigned those rights to appellant. Appellant advances two theories: First, the Collective Interest Letter was a valid exercise of the tenants' TOPA rights as a group because it provided actual notice to the Trust and the Mayor, even if it was not delivered according to the statutory requirements (by hand or sent by certified mail). Alternatively, if the Collective Interest Letter was invalid, Morstatt's statement of interest, which was delivered by certified mail, was a valid exercise of her individual TOPA rights. Under either theory, appellant contends, *all* of the tenants' rights were assigned to it, so that, if either the collective or individual rights were validly asserted, they could be exercised by appellant. We find it unnecessary to decide whether the Collective Interest Letter complied with the statute and, if so, whether it was ineffective in asserting the tenants' collective rights. As we discuss below, even if arguendo the Collective Letter was without effect, we hold that Morstatt validly exercised her individual TOPA rights and the Assignment Contract was a valid and enforceable assignment of all the tenant's collective and individual TOPA rights, including Morstatt's. This sufficed to vest appellant with the right to exercise TOPA's right of first refusal in its contract with the Trust.

### A. Morstatt's Individual Assertion of TOPA Rights

We begin by dispelling the trial court's objection that *Morrison* precluded Morstatt from submitting her individual statement of interest because it was "in direct contradiction" to her two roommates' assertion of TOPA rights in the Collective Interest Letter sent on behalf of all the tenants – including Morstatt. In *Morrison*, the court held that:

> [t]he proper understanding of TOPA as a whole, we conclude, is that an owner must entertain only one tenant-offer to buy a single-family accommodation, one tenant-offer from each rental unit to buy a two-four unit accommodation, and one tenant-offer, made collectively through a tenant organization, to buy an accommodation housing more than four rental units. The Morrisons' contrary argument that TOPA allows an indefinite and potentially sizeable number of competing tenant-offers to "bloom" in the case of single-family or two-four unit accommodations has no substantial support in the statute's language or structure.

25 A.3d at 937. *Morrison* also pointed to the "elaborate, carefully structured scheme for tenant purchase of two-four unit accommodations, requiring first collective action but then preserving the ability of tenants to compete unit-by-unit while retaining the owner's discretion to choose among offers to buy." *Id*. at 936.

We conclude that this case does not contravene *Morrison*'s guidance. First, it is worth noting that the straightforward actions in this case are nothing like the convoluted scheme in *Morrison*, where two assignees of the rights of different tenants in adjacent buildings (a single-family dwelling and a two-to-four unit building) "pursued a bifurcated strategy" and simultaneously asserted the right to negotiate the initial offer of sale as well as the right of first refusal, confronting the owner with four different offers. *See id.* at 933-34. Nothing of the sort occurred here: one entity – appellant – was the sole assignee of all the tenants and presented a single offer to match the Mussells' price in exercise of the right of first refusal. Nor was there a splitting of the interests of tenants within a unit, as in *Morrison*, because the record does not support that in submitting her letter of interest to purchase, Morstatt acted "in direct contradiction" to her unit co-tenants' interests in the collective action, which, illogically, would have implied that Morstatt's individual letter was competing against herself, as she also was part of the collective action. Rather, Morstatt followed the statutory scheme of submitting her letter, not simultaneously with the tenants' collective response, but sequentially, during the seven-day period following the initial fifteen-day period for collective action. *See* D.C. Code § 42-3404.10(1).[2] Moreover, the

---

[2] This is underscored by the factual timeline of this case: the tenants' 15-day joint-response period began when they received the "written offer of sale from the owner" or "upon the Mayor's receipt of a copy of the written offer of

trial court credited Morstatt's testimony that she sent her letter as a "backup plan in case . . . something fell through." *Morrison*'s concerns find no footing in the facts of this case.

We also reject appellees' argument that a tenant may act individually only if the tenants have taken no joint action, such that a collective assertion that is sent to the owner but deemed invalid would not trigger the subsequent seven-day period for a tenant's assertion of individual rights. Differently stated, appellees' contention is that the tenants' collective response was invalid and did not preserve their collective rights but nonetheless precludes the eight tenants' ability to assert their individual rights.

This is an issue of statutory interpretation of first impression that we consider de novo. *See Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C. 2010) (en banc). We see no warrant for a reading of the statute that forfeits the timely and properly asserted rights of individual tenants contrary to the basic purpose of TOPA to strengthen tenant rights and prevent their displacement. *See* D.C. Code § 42-

---

sale, whichever is later." D.C. Code § 42-3404.10(1). DCHRA (on behalf of the Mayor) received the Trust's TOPA Notice on August 16, 2016, meaning the 15-day joint-response period ended on August 31, 2016. Morstatt's letter was sent on September 1, 2016, and received on September 7, 2016, placing it squarely within the subsequent seven-day period.

3401.02 ("Purposes"). The language of the statute does not condition assertion of individual tenant rights on the premise of complete collective inaction versus insufficient action but simply focuses on the result: whether "the tenants acting jointly have failed to submit a written statement of interest." D.C. Code § 42-3404.10 (1). A natural reading of the statutory language is that the "fail[ure] to submit" refers to the statement in the immediately preceding sentence that "a group of tenants acting jointly shall have 15 days to provide the owner and the Mayor, by hand or by sending by certified mail, with a written statement of interest." *Id*. Under such a reading, whether there has been a "fail[ure] to submit," is measured by whether a collective statement was sent that does not comply with what TOPA requires in terms of the timing, method of delivery and substance of the statement.

But we recognize it is not the only possible reading. The phrase "failure to submit" could also refer exclusively to complete inaction on the part of the tenants acting as a collective, as appellees argue. However, this interpretation is undermined by TOPA's provision, where there has been a collective assertion of interest but the negotiation period has not resulted in a contract, of "an additional 30-day period, during which any 1 of the current tenants may contract with the owner for the purchase of the accommodation." D.C. Code § 42-3404.10(2)(B). If TOPA protects the rights of individual tenants even after

collective rights have been successfully asserted but eventually are not fruitful after substantive negotiation, it would be counterintuitive to nip individual tenant rights in the bud simply because a collective statement of interest was asserted but did not meet technical requirements at the outset. "We do not read statutory words in isolation; the language of surrounding and related paragraphs may be instrumental to understanding them." *Tippett*, 10 A.3d at 1127 (quoting *District of Columbia v. Beretta, U.S.A. Corp.*, 872 A.2d 633, 652 (D.C. 2005) (en banc)). Moreover, where there is ambiguity in the statutory language, TOPA instructs that it "favor[s] resolution of ambiguity by . . . a court toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible by law." D.C. Code § 42-3405.11.

We follow these rules of statutory construction here when we conclude that the assertion of individual tenant rights in a two-four unit building immediately after the period allowed for the assertion of the tenants' collective rights is not precluded by an assertion of collective rights that is deemed invalid.[3] Therefore,

---

[3] The cases appellees cite in support of their argument, *van Leeuwen v. Blodnikar*, 144 A.3d 565, 569 (D.C. 2016), and *Papageorge v. Stuckey*, 196 A.3d 426, 429 (D.C. 2018), do not stand for the proposition that tenants lose their right to submit individual statements of interest if they try and fail in first submitting a joint statement of interest, and instead addressed the TOPA rights of tenants who move in after an offer of sale has been accepted, and the TOPA rights of former tenants, respectively. *See van Leeuwen*, 144 A.3d at 569; *Papageorge*, 196 A.3d

Morstatt's letter asserting her individual interest was proper even if – assuming arguendo – the collective expression of interest was invalid because of the manner in which it was sent. Properly understood viewing TOPA's statutory scheme as a whole, the issue is not whether assertion of collective rights *precludes* individual tenant's rights, but one of *priority*. TOPA establishes a hierarchy for buildings with two-four units: collective rights come first; individual tenant rights are second; then third parties. *See* D.C. Code § 42-3404.10(1) and (2)(B) (stating that "tenants may respond to an owner's offer first jointly, then severally" and providing individual tenants with an additional 30 days to negotiate if the tenants jointly have not reached a contract with the owner). Morstatt's assertion of individual rights moved up in priority once the collective assertion was deemed invalid by the trial court.

In sum, we distinguish *Morrison* because its rule against multiple, competing statements from a single unit is not implicated in this case, and we conclude that a collective statement of interest that is invalid for failing to meet the statutory requirements for delivery (which we assume, without deciding, to have been the case here), falls within the scope of § 42-3404.10(1)'s "fail[ure] to submit a written statement of interest" sufficient to trigger an individual tenant's

---

at 430.

right to submit their own statement of interest. Therefore, Morstatt's letter, which satisfied the statute's delivery requirements was a valid assertion of interest to exercise her individual TOPA rights. The next question is whether appellant was validly assigned those rights.

## B. Validity of the Assignment Contract

The trial court held that Morstatt's individual rights were not assigned through the Assignment Contract, and that the Assignment Contract as a whole "was not legally effective" because it was "contingent" on the tenants' Collective Interest Letter, which Judge Kravitz had ruled was invalid. We disagree on both counts.

The interpretation of the terms of a contract is a question of law we review de novo. *See Unfoldment, Inc. v. D.C. Contract Appeals Bd.*, 909 A.2d 204, 209 (D.C. 2006). It is a basic premise of contract law that the intent of the parties to a contract is derived from the words of the contract itself. *See id.* ("A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract . . . ." (quotation marks and citation omitted)); *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984)

("If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent."). It is only where contract language is ambiguous that a court may resort to extrinsic evidence to resolve the ambiguity. *Id.* In this case there is no need to go beyond the plain meaning within the four corners of the Assignment Contract.[4]

The opening paragraph of the Assignment Contract defines the parties as "by and among the tenants of the Property" who are "acting individually and collectively." The signature page shows that, except for Attar, who signed "individually as Tenant of Unit 1 and on behalf of Tenants acting collectively as Representative," each of the other seven tenants, including Morstatt, signed "Individually as Tenant of [their identified unit]." The language in the preliminary clauses is equally clear that the tenants "approved assigning the statutory rights afforded to tenants under [TOPA]" and "desire[d] to assign and convey *all* of its rights, title, interests, duties and obligations under TOPA," and that appellant "desire[d] to accept and assume *all* of Tenants' rights, title, interests, duties and obligations under TOPA in the place and stead of Tenants." (emphases added). The operative provisions also convey that the assignment is

---

[4] The trial court did not parse the language of the Assignment Contract, but relied instead on the testimony of the witnesses about their subjective understanding and intent.

all-inclusive, with the tenants "assigning their rights, benefits, interests, duties, and obligations of TOPA Rights" to appellant and "authorizing and empowering [appellant] to exercise *all* rights and remedies under TOPA" and appellant "assum[ing] *all* of Tenants' rights and obligations." (emphases added). The contract language therefore clearly establishes that the tenants assigned all of their rights, including their individual rights, and that Morstatt's individual rights were included in the assignment.

We also conclude that the validity and enforceability of the Assignment Contract was not conditioned on the validity of the assertion of the tenants' collective rights. The contract states that the tenants "*unconditionally and irrevocably* assign[ed] their rights, benefits, interests, duties and obligations of TOPA rights" to appellant. (emphasis added). Although one of the whereas clauses refers to the Collective Interest Letter responding to the Trust's offer of sale sent to all the tenants, it is not mentioned in the operative clauses of the contract nor is its validity made a condition of the assignment. The contract's recitation of the details of the letter sent to the Trust are factual and the tenants make no representation about the legal validity of their collective assertion. The only condition mentioned in the Assignment Contract is a condition subsequent, in Section 3, Reversion, whereby the assignment is nullified and the assigned TOPA rights revert to the tenants, if appellant fails to complete the purchase of

the property by the closing date or the agreement to purchase the property is terminated.   But this condition of reversion is a term of the contract, not a condition precedent to the validity of the Assignment Contract itself.   In light of D.C. Code § 42-3404.06's expansive language that assignment of tenant rights under TOPA may "occur at any time . . . and may be structured in any way the tenant, in the tenant's sole discretion, finds acceptable," and the unambiguous contractual language that both collective and individual TOPA rights were assigned, we hold that appellant was vested with those rights by the Assignment Contract and could, as assignee, exercise Morstatt's right of first refusal of the Mussells' offer.  *See Papageorge*, 196 A.3d at 140 (noting that "when TOPA rights are effectively assigned, the assignee can 'effectively become' a tenant of the unit for purposes of applying the statute").

## III.   Conclusion

For the foregoing reasons, the trial court judgment is reversed and the case is remanded with instruction to enter judgment for appellant, grant specific performance of appellant's contract with the Trust to purchase the Property, and vacate the order awarding attorney's fees and costs to be paid to the Trust by appellant.   On remand, the trial court may also undertake such further proceedings consistent with this opinion as may in the trial court's discretion be

appropriate, including consideration of the Trust's counterclaim for attorney's fees and costs against the Mussells.

*So ordered.*